# FORM A

CIVIL RIGHTS COMPLAINT TO BE USED BY A *PRO SE* PRISONER
UNDER 42 U.S.C. § 1983 or
UNDER *BIVENS V. SIX UNKNOWN FED. NARCOTICS AGENTS*

Rev. 10/10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

**FILED**
JAMES J. VILT, JR. - CLERK
MAY 27 2025
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

KHALID A. ZAAHIR

_____

(Full name of the Plaintiff(s) in this action)

v.

LAURA PLAPPERT

COOKIE CREWS

KRISTY PONZETTI-CARR

LAUREN EPLY-MASSEY

AMY LOU FISHER

(Full name of the Defendant(s) in this action)

CIVIL ACTION NO. 5:24CV-193-JHM
(To be supplied by the clerk)

(X) DEMAND FOR JURY TRIAL

( ) NO JURY TRIAL DEMAND
(Check only one)

## I. PARTIES

(A) **Plaintiff(s)**. Place the full name of the Plaintiff in the first blank below, his/her place of confinement, address, and status. Repeat this procedure for each additional Plaintiff named, if any.

(1) Name of Plaintiff: Khalid A. Zaahir

Place of Confinement: Ky. State Penitentiary

Address: 266 Water Street; Eddyville, KY. 42038

Status of Plaintiff: CONVICTED (X)  PRETRIAL DETAINEE ( )

(2) Name of Plaintiff: _____

Place of Confinement: _____

Address: _____

Status of Plaintiff: CONVICTED (___)   PRETRIAL DETAINEE (___)

(3) Name of Plaintiff: _____

Place of Confinement: _____

Address: _____

Status of Plaintiff: CONVICTED (___)   PRETRIAL DETAINEE (___)

**(B) Defendant(s).** Place the full name of the Defendant in the first blank below, his/her official position title in the second blank, and his/her place of employment in the third blank. Mark the capacity in which the Defendant is being sued. Repeat this procedure for each additional Defendant named, if any.

(1) Defendant _Laura Plappert_ is employed as _Warden_ at _Ky. State Penitentiary_.

The Defendant is being sued in his/her (X) individual and/or (X) official capacity.

(2) Defendant _Cookie Crews_ is employed as _Commissioner_ at _KDOC; Frankfort_.

The Defendant is being sued in his/her (X) individual and/or (X) official capacity.

(3) Defendant _Kristy Ponzetti-Carr_ is employed as _Health Services Administrator_ at _Ky. State Penitentiary_.

The Defendant is being sued in his/her (X) individual and/or (X) official capacity.

(4) Defendant _Lauren Eply-Massey_ is employed as _Chief Unit Administrator_ at _Ky. State Penitentiary_.

The Defendant is being sued in his/her (X) individual and/or (X) official capacity.

### III.   STATEMENT OF CLAIM(S)

State here the FACTS of your case. State how you believe your constitutional rights were violated. Describe how each Defendant violated your rights. And set forth the dates on which each event took place. Do not make legal arguments or cite cases or statutes. However, identify the constitutional right(s) you allege was/were violated. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs.

CLAIM I:   DELIBERATE PHYSICAL & PSYCHOLOGICAL TORTURE; CRUEL & UNUSUAL PUNISHMENT/LIVING CONDITIONS

EIGHTH AMENDMENT

From March 20, 2024 through March 28, 2024, continuously, the Plaintiff was subjected to an array of draconian and barbaric methods of both psychological and physical torture. Then again, from April 17, 2024 through April 22, 2024, the Plaintiff was subjected to the same tortures.

These atrocities occurred within a suicide-isolation cell, known as "Observation #2," at the Kentucky State Penitentiary (henceforth "KSP"). Torture methods included: severely frigid temperatures [estimated between low 40s° F. to mid-50s° F.], which were alternately fluctuated at odd intervals, intently to induce "shock-culture effect" — a torture tactic popularized in Vietnam War-era concentration camps, and now globally outlawed by United Nations' Council Against Human Torture

### III. STATEMENT OF CLAIM(S) continued

(CAT or CAHT), reached by treaty at the 1949 Geneva Conventions; denial of blanket or mattress of any kind, as well as of socks or stockings or any type of covering for the feet; subjection to harsh artificial lighting literally 24-hours a day (literally never goes off); denial of running water, and exposure to human waste for several hours at a time, often greater than 12-16 hours, sometimes over a full 24 hours; exposure to residual "OC" pepper spray left inside the cell from time before the Plaintiff's occupancy — whereby the cell was not decontaminated after (excessive) use of "OC" pepper spray.

    The Plaintiff was subjected to these tortures simply for exercising her First Amendment right to peaceably demonstrate (Plaintiff was observing a hunger strike), and for seeking mental healthcare against suicidal feelings/ideation. The Plaintiff was never hostile nor aggressive, nor was there ever any "threat" posed by the Plaintiff; these methods of torture are used by the prison simply as a "deterrent" against inmates going on either "Suicide Watch" or "Hunger Strike Watch," or as a means of retaliation against such.

    There likewise are no pragmatic reasons for such

inhumane treatment, nor do any serve any departmental or governmental interests — beyond simple and malicious physical/psychological torture. The facility's RHU ("Restrictive Housing Unit") in fact uses for its bed linen a suicide-prevention blanket made by the Bob Barker Co. Item #SB5480 is described by the Bob Barker Co. as a "Suicide/Isolation blanket" and is actually named the "LifeLine Blanket." It is made specifically for suicide-watch situations under maximum-security conditions. The prison's RHU always has this item in stock, but refuses it to inmates on either hunger strike or suicide watch. Likewise, there is no reason (beyond intended torture) to deny an inmate who is on hunger strike/suicide watch a mattress or some type of safe (e.g. sheet) coverings for her feet. A stocking-like material of which are made boxer shorts (which the facility does supply to inmates on suicide watch or hunger strike) is also used to make available socks, shoes or a bra. The Plaintiff was deprived of these altogether.

  For nineteen (19) consecutive days, the Plaintiff was continuously subjected to these severe methods of torture, and has as a direct result suffered extensive psychological and physical harm/trauma. The Plaintiff was, again (less than

5 a.

three weeks later), re-subjected to these same atrocities for an additional five (5) days — also continuously.

The cell's dimensions are approximately 12 ft. x 8 ft. x 12 ft. The cell's front wall & door are roughly 90% transparent plexiglass, and the unit's "core area" is well-lit. Also, there is a camera inside the cell. There is no warrant for three (3) fluorescent 200-watt lights within this cell, and certainly not to keep them burning literally 24/7. This, in conjunction with the denial of a mattress and blanket, as also with the intentionally induced frigid temperatures within the cell, is a means by which to effect sleep-deprivation — another illegal torture method.

For a total of twenty-four (24) days — nineteen (19) of which being consecutive, then again another five (5) consecutive days, — the Plaintiff was subjected to the intensely sadistic torture tactic of sleep-deprivation alongside the equally brutal exposure to cold-air blasts from a vent duct positioned squarely across from her bed area (less than six feet away from), as well as the physical pain of having to lay on a bare concrete slab as a bed. The Plaintiff has suffered extensive (possibly irrevocable) nerve damage in her

5 b.

back & in both feet [ from being made to walk barefoot on cold concrete throughout this entire ordeal ], as a direct result of being subjected to these torture methods.
See EXHIBITs #1 & #2

  It should be noted here that the bulk of evidentiary documents to be relied upon for this filing's review/examination is currently unavailable to Plaintiff [ see companion filing, "MOTION FOR LEAVE TO SUPPLEMENT 42 U.S.C. § 1983" ] By which, Plaintiff intends to supplement said evidence at a later date, when is/becomes available to her.

  Similarly, the Plaintiff suffered burns to her skin — on her forehead, near her nose, and on her wrists and hands — as a result of being made to lay on concrete covered in residual "OC" pepper spray, which prison officials had failed to decontaminate prior to the Plaintiff's placement in the cell.

  Such torture methods are routine at KSP, and each of the Defendants named in this filing are well aware of it. Indeed, are even implicit to its continuity. The Plaintiff talked almost daily with the Unit Administrator I Amy Lou Fisher

5 c.

throughout the ordeal. This administrator was indifferent to the Plaintiff's suffering. For the first eleven or twelve days, the Plaintiff was even denied the opportunity to take a shower. Through this same administrator, both the Unit Administrator II Lauren Eply-Massey and the Warden Laura Plappert were made aware of the abuses & inhumane treatment that Plaintiff was being exposed to; each sent messages (verbally) such as "sue me" or "file a grievance" or "come off hunger strike."

No effort was ever made by any of these to improve the Plaintiff's living conditions nor to cease the methods of human torture, both psychological and physical, being implemented as a barbaric means of "deterrent" & retaliation against the Plaintiff for merely exercising her constitutional rights to peacefully demonstrate & for feeling suicidal by experiencing psychological trauma. These Defendants did all, under color of the law, contribute to violation of the Plaintiff's Eighth Amendment rights Protections against such acts of human torture & cruel and unusual punishment/treatment.

---

CLAIM II:          MEDICAL NEGLIGENCE; DELIBERATE INDIFFERENCE; CRUEL & UNUSUAL TREATMENT

---

### EIGTH AMENDMENT

---

5 d.

III. STATEMENT OF CLAIMS; continued

The Plaintiff suffered a variety of physical injuries as a direct result of these torture methods/living conditions. At the direction of the facility's "Health Services Administrator (henceforth HSA)," Kristy Ponzetti-Carr, the APRN Karen Vickery-Ramey repeatedly denied the Plaintiff care for her injuries. See EXHIBIT #1

Specifically, the Plaintiff suffered extensive nerve damage in her back and in both feet; extensive damage to her eyes, as the Plaintiff has pre-existing condition of light-sensitivity before being subjected to 24-hour harsh artificial lighting for twenty-four (24) days of torture; and also some extent of skin damage, resulting from laying in residual "OC" pepper spray for several weeks (initially twelve days without a shower). It is noteworthy that the Plaintiff suffers also a pre-existing skin condition — dermatitis — further exacerbated by untreated exposure to "OC" [ Oleoresin capsicum ] pepper spray & left on her skin for so long.

The Plaintiff's eye damage, from sensitivity to light, was quite reasonably treated by the resident optometrist, Natasha Lyles — via Artificial Tears rx. The Plaintiff does continue to

5 e.

III. STATEMENT OF CLAIMS, continued

require this treatment for her eyes even today — 22 May of 2025...

As regards the skin damage, APRN Karen Vickery-Ramey and HSA Kristy Ponzetti-Carr both refused the Plaintiff any type of medical care/treatment for this injury & further refused to refer the Plaintiff to an outside dermatologist for treatment/care. Medical personnel also refused to take pictures of the extent of skin damage for the Plaintiff's medical file, even when requested specifically by the Plaintiff. [ documentary evidence of this is forthcoming in supplement, as Plaintiff intends. ]

The Plaintiff does still have lasting "burns" & discoloration on her skin from these injuries, should the Court wish to subpoena pictures be taken now for evidentiary examination.

As regards the nerve damage and associated pain, the APRN and the HSA for several months attempted to force the Plaintiff to experiment with psychotrophic drugs as an alleged means of "treatment" for the pain. The Plaintiff — who is already on psychotrophic medications for depression and anxiety among other forms of psychological trauma, notably arising from

5 f.

this very episode of psychological & physical torture — did try explaining to medical staff her concerns for contraindication and counter-effect, and stated emphatically (as is her right) that she required exclusively treatment for her NERVE pain (i.e. physical pain). **EXHIBIT #1**

Defendants Kristy Ponzetti-Carr (HSA) & her APRN Karen Vickery-Ramey, for several months, deliberately neglect the Plaintiff's suffering and physical pain, under color of the law — to the detriment of the Plaintiff's health & well-being, and continuity of human agony... thereby violating her Eighth Amendment rights by virtue of Medical Negligence & Deliberate Indifference.

## CLAIM III: RETALIATION; MALICE; DUE PROCESS VIOLATIONS; MACHINATIONS;

## FIRST & FOURTEENTH AMENDMENTS

The above-described torture was rendered by the Defendants, ultimately, strictly as a means of retaliation against

59.

the Plaintiff for exercising her First Amendment rights to peacefully demonstrate (via hunger strike) against injustice and effectively seeking to petition state government for redress of grievances.

 The Plaintiff was being administratively retaliated against by prison officials (viz. Lauren Eply-Massey, and two other unit administrators, Jill Robertson and Jacob Bruce), who were in concert conspiring to exploitatively misuse a DOC "Transition (TU) Program" to the end of illicitly extending solitary confinement beyond the 30-day maximum, as well as extending a 90-day "Administrative Control" [henceforth "A/c" or "ACU"] "cycle," without justifiable grounds. Ref. "EXHIBITS #1 thru #3", within **EXHIBIT #4**

---

 [Entirety of EXHIBIT #4 is here included only for context. The Plaintiff does not raise, in this case, the issue of obstruction/sabotage of the criminal case described therein nor involves argument of those facts, necessarily, with those of this lawsuit — but only explains fully the extent of administrative corruption with which the Plaintiff had been dealing, and why ultimately (devoid of alternative options) she'd been driven

■

5 h.

## III. STATEMENT OF CLAIM(S) continued

to the extreme of peaceably demonstrating by means of hunger/dehydration strike. ("EXHIBIT #1" within EXHIBIT #4)]

After Plaintiff had completed the maximum sentence (30 days) for a prison rule infraction, as well as an additional 90-day "cycle" of A/C — which was the full extent of what the KDOC's Central Office Classification Committee ["COCC"] had authorized (see attachments to Letter To Commissioner Cookie Crews, "EXHIBIT #1" within EXHIBIT #4), — the Defendant Lauren Eply-Massey refused to release the Plaintiff from RHU. By virtue of internal corruption, machinations, lies and "closed-door favors," the Defendants [viz. UA% Lauren Eply-Massey and Warden Laura Plappert] ultimately convinced only one COCC member, Kieryn Fannin, to sign off an "approval" for forced assignment to the Transition Program... But before this (coming via a second "re-recommendation" after the fact), the Defendants were simply holding the Plaintiff illegally in RHU, against the COCC's full committee having authorized only an A/C cycle — which Plaintiff had already completed, without incident nor grounds for any

5 i.

legitimate re-recommendation for extension. Whereby following a number of official complaints & informal letters (to Warden, Commissioner, etc.) after the appeal process had been exhausted, the Plaintiff invoked her First Amendment liberty to peacefully demonstrate against such injustice and administrative corruption, via hunger-dehydration strike.

 The Defendants then did, knowingly and under color of law, maliciously retaliate against the Plaintiff with the endorsement of sadistic torture methods described under CLAIM I of this filing; as well as the denials of basic medical care, prolonged for several months against excruciating human suffering — itself a sadistic brand of torture; and thereby violating the Plaintiff's First Amendment rights, as their malicious intent was motivated strictly by the Plaintiff's free exercise thereof.

 Defendants also retaliated by issuing Plaintiff a "disciplinary report" for being on hunger strike. (documentary evidence for this forthcoming, via Supplement, at a later date) Both First and Fourteenth Amendments were violated thus.

5j.

Two of the Plaintiff's vital witnesses — Cassidy Eubanks (RN) & Karen Vickery-Ramey (APRN), who both examined the Plaintiff near-daily while she was observing her hunger strike [and thus would attest that Plaintiff had sustained no injury from the hunger strike itself] — were denied the opportunity to testify on record in the Plaintiff's behalf.

This was a violation of the due process clause, and thereby violated Plaintiff's Fourteenth Amendment rights.

Both of the witnesses being medical professionals, Cassidy Eubanks & Karen Vickery-Ramey are qualified to have attested to the Plaintiff's innocence. Thus, their testimony is vital.

Beyond the technical scope of procedural liability, the very fact of the prison issuing a disciplinary report for the Plaintiff being on hunger strike is itself a violation of the Plaintiff's First Amendment rights to assemble/demonstrate peaceably. This also violated her Fourteenth Amendment rights, as it deprived her of the equal protection of the law — against such transgressions as malicious retaliation for exercising her

5 K.

III. STATEMENT OF CLAIM(S) continued

First Amendment liberties to begin with.

CLAIM IV:   OBSTRUCTION; MACHINATIONS; DENIAL OF ACCESS TO THE COURTS; SABOTAGE

SIXTH & FOURTEENTH AMENDMENTS

 Both before and since the present filing's original version was prepared, the KSP facility's administration has by various underhanded methods, antics and tactics attempted to threaten the Plaintiff's release from RHU and to thwart her efforts to seek legal redress. [Many examples of this may be found in EXHIBITS to a separate lawsuit filed in this Court by the Plaintiff against the same Defendants, chiefly.]

 Even before the Plaintiff's hunger strike, she had challenged inhumane and cruelly unusual living conditions within RHU via grievances & formal letters to Commissioner Cookie Crews. See EXHIBIT #2A It seems evident that, among other factors, this was

51.

III. STATEMENT OF CLAIMS, continued

one of the foremost motivations for the Defendants' retaliation against the Plaintiff.

Though the Commissioner has since rectified the single issue of clothing in RHU, the Plaintiff was nonetheless exposed to such cruel and unusual living conditions for well over four (4) months' time. The psychological trauma of that cannot be erased, by far.

In her efforts to gather documentary evidence and conduct legal research, the prison's administration continually perpetrated an array of machinations (including pretending to "lose" or "misplace" the Plaintiff's legal documents turned in for copying, taking several weeks or even months to fulfill simple legal services requests, etc.) in attempt to hinder, obstruct and otherwise deny Plaintiff's means of accessing the Courts. Ref. EXHIBIT #3B

The prison even went so far as deliberate mail-tampering, intercepting and apparently destroying the original version of this very filing. EXHIBIT #2B This occurred after first destroying Plaintiff's original

5 m.

III. STATEMENT OF CLAIMS cont'd

Declaratory filing; when once the Plaintiff had the deficient version of this filing routed back to her through a fellow inmate's family member & had included it as an attachment to her 42 U.S.C. §1983 lawsuit, someone within KSP's administration or its mail room intercepted the Plaintiff's lawsuit and apparently destroyed it. Ref. DN 5 within this case...

Now, most recently, as the Plaintiff attempts diligently to comply with this Court's May 1, 2025 ORDER to re-file her 42 U.S.C. §1983 complaint by May 30, 2025 — the latest obstruction is the "Inmate Accounts Office" trying further to delay the Plaintiff's efforts. Ref. Affidavit & letter of evidence within FINANCIAL SECTION of this filing.

These antics being deliberate, retaliatory, malicious and intently-calculated machinations against the Plaintiff's legal efforts, under color of the law, the Defendants thereby did knowingly violate Plaintiff's Sixth & Fourteenth Amendment rights.

The Plaintiff thus sues & seeks this Court's redress...

∎

5 n.

IV. **RELIEF**

State exactly what you want the Court to do for you. (If you seek relief which affects the fact or duration of your imprisonment (for example: release from illegal detention, restoration of good time, expungement of records, release on parole), you must also file your claim under 28 U.S.C. §§ 2241, 2254 or 2255.) The Plaintiff(s) want(s) the Court to:

__X__ award money damages in the amount of $ 24,000.00 (Twenty-four thousand)

__X__ grant injunctive relief by Order KSP to immediately cease/desist torture of inmates on suicide-Hunger strike watch; Provide blankets, socks or feet coverings & mattress

__X__ award punitive damages in the amount of $ 34,000.00 (Thirty-four thousand)

__X__ other: Plaintiff receive Non-psychotrophic rx for nerve pain

V. **DECLARATION UNDER PENALTY OF PERJURY**
(each Plaintiff must sign for him/herself)

I, the undersigned, declare under penalty of perjury that the information contained in this document is true and correct.

This **21** day of **May**, 20**25**.

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

_____
(Signature of additional Plaintiff)

I hereby certify that a copy of this complaint was delivered to the prisoner mail system for mailing on **May 21, 2025**.

_____
(Signature)

6



USPS MEDIA MAIL

US POSTAGE & FEES PAID IMI
2 LB MEDIA MAIL RATE
ZONE 2
063S0014950407
19718119
FROM 42038
Stamps
05/21/2025
0001

INMATE ZAAHIR 139980
KENTUCKY STATE PENITENTIARY
266 WATER STREET
EDDYVILLE KY 42038

SHIP TO:
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
FEDERAL BUILDING 423 ROOM 126
OWENSBORO KY 42301

USPS TRACKING #

9449 0502 0620 8002 0160 80