UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

KHALID A. ZAAHIR                                                PLAINTIFF

v.                                          CIVIL ACTION 5:24-CV-P193-JHM

LAURA PLAPPERT et al.                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Plaintiff Khalid A. Zaahir, a prisoner at the Kentucky State Penitentiary (KSP), proceeding *pro se*, initiated this 42 U.S.C. § 1983 action.  The complaint (DN 11) is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, this action will be dismissed.

### I. MOTION (DN 16)

The Court first considers Plaintiff's motion to correct the record to show that she does demand a jury trial and that she seeks monetary damages (DN 16).[1]

**IT IS ORDERED** that Plaintiff's motion (DN 16) is **GRANTED**.

The Clerk of Court is **DIRECTED** to correct the docket of the case to show that Plaintiff demands a jury trial.

This Memorandum Opinion and Order accurately reflects Plaintiff's requests for relief, which includes monetary relief of both compensatory and punitive damages.

### II. STATEMENT OF CLAIMS

Plaintiff sues in their official and individual capacities Laura Plappert, KSP Warden; Cookie Crews, Kentucky Department of Corrections Commissioner; Kristy Ponzetti-Carr, KSP

---

[1] The Court uses "she/her" because Plaintiff does so in her filing.

Health Services Administrator; Lauren Eply-Massey, KSP Chief Unit Administrator; and Amy Lou Fisher, KSP Unit I Administrator.

Plaintiff first alleges that her Eighth Amendment rights were violated during a 19-day stay (March 10-28, 2024), and again during a five-day stay (April 17-22, 2024), in a suicide observation cell when she was subjected to "torture" in violation of the Geneva Convention, in particular frigid temperatures, which she estimates to be between the low-40s to mid-50s and which "fluctuated at odd intervals." According to Plaintiff, this is recognized as a "torture tactic" outlawed by the Geneva Convention. She also alleges that she was denied a blanket, mattress, and socks; exposed to harsh artificial lighting 24 hours per day despite her "light sensitivity"; denied running water and was exposed to human waste for "several hours at a time, often greater than 12-16 hours, sometimes over a full 24 hours"; denied a shower by Defendant Fisher for the first 11-12 days; and exposed to residual OC spray on the floor of her cell, causing "burns" to her skin and exacerbating her pre-existing dermatitis. She asserts that she has suffered "possibly" irrevocable nerve damage to her feet from having to walk barefoot on cold concrete.

Plaintiff states that Defendants Eply-Massey and Plappert "were made aware of the abuses and inhumane treatment that Plaintiff was being exposed to," but neither did anything to rectify the situation. She alleges that Defendant Eply-Massey refused to release her from the Restricted Housing Unit (RHU) and, along with Defendant Plappert, "forced [Plaintiff's] assignment to the Transition Program."

Plaintiff next claims that her Eighth Amendment rights were denied when Defendant Ponzetti-Carr and non-Defendant APRN Karen Vickery-Ramey denied her medical care for damage to her eyes, skin, and nerves in her back and feet. She states that she was given artificial tears for her eyes from the resident optometrist but alleges that Defendant Ponzetti-Carr and

Vickery-Ramey denied her medical care for her skin, including denying her a referral to an outside dermatologist. Regarding the nerve pain, Plaintiff asserts that Defendant Ponzetti-Carr and Vickery-Ramey "attempted to force Plaintiff to experiment with psychotrophic drugs as an alleged means of 'treatment' for the pain," despite Plaintiff insisting that she required treatment exclusively for her nerves.

Plaintiff's third claim is that the "torture" she experienced was in retaliation by Defendant Eply-Massee and non-Defendants Jill Robertson and Jacob Bruce for exercising her First Amendment right to engage in a hunger strike "against injustice and effectively seeking to petition state government for redress of grievances." Plaintiff further asserts that she was retaliated against and her right to equal protection violated when she was issued a disciplinary report for being on a hunger strike. She also claims that the discipline report process violated her due process rights because two witnesses were not allowed to testify on her behalf.

Fourth, Plaintiff claims that her Sixth and Fourteenth Amendment rights were violated by Defendant Eply-Massey and non-Defendants Robertson and Bruce by "obstruction; machinations; denial of access to the courts; sabotage."

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief.

Plaintiff attaches a number of exhibits to the complaint. Where relevant, the Court will discuss them below.

### III. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the Prisoner Litigation Reform Act (PLRA) requires the trial court to review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the official-capacity claims for damages against Defendants who are state employees will be dismissed for failure to state a claim.

### B. Individual-capacity claims

#### 1. Geneva Convention

The Geneva Convention codifies the law of war, *Kadic v. Karadzic*, 70 F.3d 232, 242 (2d Cir. 1995), and has no application to this case.  Moreover, the Geneva Convention "does not create a private right of action for private individuals to enforce its terms." *Nattah v. Bush*, 770 F. Supp. 2d 193, 204 (D.D.C. 2011).  Any claims made by Plaintiff based on the Geneva Convention must be dismissed for failure to state a claim.

#### 2. Conditions of confinement

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

An Eighth Amendment conditions-of-confinement claim has an objective and a subjective component.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  To state a conditions-of-confinement claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component) and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate

5

indifference" to inmate health or safety (the subjective component)." *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

### a. Cold cell

Plaintiff alleges that during a 19-day stay and a subsequent five-day stay in a suicide observation cell she was exposed to "frigid" temperatures which she estimated to be between low-40s to mid-50s. Plaintiff presents no basis for her assertion regarding the cell's temperature other than her estimation, which is not sufficient. *See, e.g.*, *Payette v. Trierweiler*, No. 2:10-CV-8, 2010 WL 3937158, at *7 (W.D. Mich. Oct. 4, 2010) (denying Eighth Amendment claim where plaintiff had no basis, other than the fact that he felt cold, for claim that "it felt as if his cell was being kept between '55 and 64 degrees' from September to December"). Nor do her allegations rise to the level of "[e]xtreme deprivations" to state an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. at 9; *see, e.g.*, *Dean v. Campbell*, No. 97-5955, 1998 WL 466137 at *2 (6th Cir. July 30, 1998) (confinement in a cold segregation cell for more than twenty days not sufficient to show "the types of extreme deprivation which are necessary for an Eighth Amendment conditions of confinement claim").

Plaintiff also states that she was denied a blanket, a mattress, and socks during her stay in the suicide observation cell. Again, Plaintiff's allegations do not rise to the level of a constitutional violation. *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750 (6th Cir. Feb. 15, 1996) (no Eighth Amendment violation where prisoner denied a mattress for two weeks); *Cook v. Leitheim*, 1:22-cv-630, 2022 WL 3040342, at *6 (W.D. Mich. Aug. 2, 2022) (concluding that a 30-day mattress restriction did not rise to the level of an Eighth

Amendment violation); *Stewart v. Horton*, No. 2:22-CV-127, 2022 WL 3273586, at *6 (W.D. Mich. Aug. 11, 2022) ("Plaintiff fails to allege any facts to suggest that the deprivations complained of—the lack of shower shoes, additional underwear, socks, and more than a jumpsuit for two weeks—were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.").  These claims will be dismissed for failure to state a claim.

### b. Lighting

Plaintiff claims that she is sensitive to light, and the suicide cell was lit 24-hours a day.  However, "the discomfort and inconvenience of constant light is directly related to the purpose of the cell in the first place: to observe and protect."  *Watkins v. Simon*, No. 1:19-CV-838, 2019 WL 5704021, at *4 (W.D. Mich. Nov. 5, 2019); *see also Hartsfiled v. Stelma*, No. 1:16-cv-1135, 2016 WL 6775475, at *1 (W.D. Mich. Nov. 16, 2016) (finding no Eighth Amendment violation where the suicide cell has lights on 24 hours per day).  Moreover, in her own words she was "reasonably treated" with artificial tears.  Plaintiff fails to state a claim for the exposure to 24-hour a day lighting.

### c. Exposure to human waste

Plaintiff alleges that she was denied running water and exposed to human waste for "several hours . . ., often greater than 12-16 hours, sometimes over a full 24 hours" at a time.

The Eighth Amendment protects prisoners from being denied "the basic elements of hygiene."  *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) (citation omitted).  Poor sanitary conditions, particularly those related to human waste, can establish a constitutional violation.  *See Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012).  "It is well-established that the presence

of some unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021). "[T]he temporary exposure to human waste is not sufficiently serious so as to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result." *Lanoue v. Simons*, No. 1:22-CV-1111, 2023 WL 2236770, at *6 (W.D. Mich. Feb. 27, 2023). Here, Plaintiff's exposures were temporary, and she does not allege any facts suggesting that she was injured as a result of exposure to the "human waste." *See Alexander v. Tikkanen*, No. 2:24-CV-196, 2025 WL 854350, at *5 (W.D. Mich. Mar. 19, 2025).

Nor do her allegations of temporary denials of running water state a constitutional violation. *See Richmond*, 450 F. App'x at 455 (holding that allegations by inmate of denial of toilet paper, soap, running water, or the ability to shower for six days did not violate the Eighth Amendment); *Lane v. Culp*, No. CIV.A. 05-576, 2007 WL 954101, at *4 (W.D. Pa. Mar. 28, 2007) (allegation that inmate was denied running water for period of days and forced to sleep on floor without clothing or bedding for seven days failed to state constitutional claim). These claims will be dismissed for failure to state a claim.

### d. Shower

Plaintiff also alleges that she was denied a shower for the first eleven or twelve days she was in the suicide cell. This single instance of not being allowed to shower fails to state a claim, and this claim will be dismissed. *See Benson v. San Francisco Cnty. Jail #3,* No. 22-CV-00965-WHO (PR), 2022 WL 1750032, at *1 (N.D. Cal. May 31, 2022) ("While allowing an inmate to go for almost two weeks without a shower should not be condoned as a penological practice, in a single instance it does not rise to the level of a constitutional violation."). This is true especially

where, as here, Plaintiff does not allege that she was denied the ability to maintain her hygiene. *See Henderson v. Cnty. of Kent*, No. 1:24-CV-1026, 2024 WL 4540459, at \*14 (W.D. Mich. Oct. 22, 2024) ("Even though Plaintiff alleges that he was only permitted to shower once between September 8 and 17, 2024, he does not allege that he was denied the ability to maintain hygiene on the days he was not allowed to shower."); *Colon v. King*, No. 1:25-CV-806, 2025 WL 2157985, at \*5 (W.D. Mich. July 30, 2025) ("Even though Plaintiff alleges that he was only permitted to shower twice between August 2 and August 19, 2024, he does not allege any facts suggesting that he was denied the ability to maintain hygiene on the days he was not allowed to shower."); *Graves v. Tenn. Dep't of Corr.*, No. 2:22-CV-02078, 2024 WL 6048896, at \*4 (W.D. Tenn. Mar. 29, 2024) ("Graves alleges a single instance of being denied a shower for ten days. . . . An isolated event such as a ten-day lapse in February 2021 does not objectively violate Graves' right to be free from cruel and unusual punishment under the Eight Amendment.") (citing *Rivera v. Mathena*, 795 F. App'x 169, 174 (4th Cir. 2019). This claim will be dismissed for failure to state a claim.

*e. Skin*

Plaintiff states that she suffered "burns" to her "forehead, near her nose, and on her wrists and hands" due to lying on the concrete floor with residual OC spray from before she was placed in the cell. But she offers no reason that residual OC spray exposure is "sufficiently serious" or that any Defendant had a "sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834, to state an Eighth Amendment claim. "Courts routinely have concluded that officers do not typically violate the serious medical needs of one prisoner by using pepper spray to extract an inmate from a nearby cell." *Thompkins v. Binner*, No. 2:21-CV-138, 2021 WL 5410486, at \*6 (W.D. Mich. Nov. 19, 2021) (citing *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018)).

### *3. Retaliation*

Plaintiff alleges that she was put in the "suicide-isolation cell" where she experienced "torture" in retaliation by Defendant Eply-Massey and non-Defendants Robertson and Bruce for engaging in a hunger strike and for "seeking mental healthcare against suicidal feelings/ideation." She attaches a letter to Defendant Crews dated March 9, 2024, in which she states that she will engage in a hunger strike to protest KSP for "using the [RHU] Transition Program as a guise to underhandedly extend seg./AC time."  DN 11-8.

Retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam).  To state a retaliation claim, Plaintiff must show that: (1) she engaged in constitutionally protected conduct, (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated at least in part by Plaintiff's protected conduct.  *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X*, 175 F.3d at 394).

While it is not clear if Plaintiff has a clearly established First Amendment right to engage in a self-imposed hunger strike in protest, a "hunger strike may be protected by the First Amendment if it was intended to convey a particularized message."  *Wilson v. Homer*, No. 2:22-CV-70, 2022 WL 3273585, at *11 (W.D. Mich. Aug. 11, 2022) (quoting *Malone v. Conley*, No. 1:17-CV-413, 2018 WL 1583973, at *2 (S.D. Ohio Apr. 2, 2018), *report and recommendation adopted*, 2018 WL 3642867 (S.D. Ohio Aug. 1, 2018)); *see also Stefanoff v. Hays Cnty.*, *Tex.*, 154 F.3d 523, 527 (5th Cir. 1998).  First, Plaintiff offers no reason that placing her in the suicide observation cell was not an appropriate response to expressing "suicidal feelings/ideation."  As for

retaliation because of her hunger strike, assuming that Plaintiff's hunger strike was protected conduct, she makes no factual allegations to support a causal connection between the alleged protected conduct and the alleged adverse action. *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that "merely alleg[ing] the ultimate fact of retaliation" is not sufficient to state a claim). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Ishaag v. Compton*, 900 F. Supp. 935 (W.D. Tenn. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Williams v. Melvin*, No. 23-CV-12868, 2024 WL 310185, at *3 (E.D. Mich. Jan. 26, 2024) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).

Plaintiff also alleges in the portion of her complaint discussing the Sixth and Fourteenth Amendment that she had "challenged inhumane and cruelly inhumane living conditions within RHU via grievances and form letter . . . . *It seems evident that*, among other factors, this was one of the foremost motivations" for Defendants' retaliation against Plaintiff (emphasis added). Again, Plaintiff offers only speculation. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d1534, 1538–39 (6th Cir. 1987)).

Therefore, Plaintiff's retaliation claim must be dismissed for failure to state a claim upon which relief may be granted.

### 4. Medical care

Plaintiff next claims that her Eighth Amendment rights were denied when Defendant Ponzetti-Carr and non-Defendant APRN Karen Vickery-Ramey denied her medical care for her injuries to her nerves, eyes, and skin.

The Eighth Amendment prohibits prison officials from showing deliberate indifference to a convicted prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim "has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "The objective component requires the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Farmer*, 511 U.S. at 834). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

As to the subjective component, "the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness'" in response to the plaintiff's serious medical need. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). Such a "showing requires proof that each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal quotation marks omitted)). Differences in judgment between a prisoner and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to establish a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020). The Sixth Circuit distinguishes "between cases where [there is] a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

### a. Nerve pain

Plaintiff asserts that Defendant Ponzetti-Carr and non-Defendant Vickery-Ramey "attempted to force Plaintiff to experiment with psychotrophic drugs as an alleged means of 'treatment' for the pain," despite Plaintiff insisting that she required treatment exclusively for her nerves. She attaches a grievance dated May 30, 2024, requesting that she be given a different prescription for treating nerve pain other than Cymbalta. DN 11-1. The response was, "Per your provider, you must follow the Cymbalta trial before a different medication can be tried." *Id.*

The treatment Plaintiff received is not "so woefully inadequate as to amount to no treatment at all," *Alspaugh*, 643 F.3d at 169, but instead is simply not the treatment she wants. According to Plaintiff, she received medical care, and medical personnel in charge of her medical care did not agree with her on the type of medicine she should receive. "[A] prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation." *DeFreeze v. Zuberi*, 39 F. App'x 137, 139 (6th Cir. 2002); *see also Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) (holding that inmate and medical provider's disagreement "over the preferred medication to treat [inmate's] pain . . . does not support an Eighth Amendment claim"). Accordingly, Plaintiff fails to state an Eighth Amendment claim regarding her nerve pain.

### b. Eyes

Plaintiff admits to being seen by an optometrist and "reasonably treated" for the "damage" to her eyes from her pre-existing light sensitivity by being prescribed artificial tears. Accordingly,

13

even assuming that Plaintiff's eye condition was a serious medical need, Defendant Ponzetti-Carr was not deliberately indifferent, and Plaintiff has not alleged an Eighth Amendment violation.

### c. Skin

Plaintiff alleges that Defendant Ponzetti-Carr and non-Defendant Vickery-Ramey denied her any medical care for her skin, which she states has "lasting 'burns' and discoloration," denied her a referral to an outside dermatologist, and denied her request to take photos of the damage to her skin for her medical file, "even when requested specifically by the Plaintiff."

Plaintiff attaches two Healthcare Request Forms (DN 11-2).  The first is from May 2025, more than a year after her stays in the suicide observation cell.  It asks for a refill of her A and D ointment because her feet develop callouses without it.  The response was for Plaintiff to return to sick call if callouses develop, drink plenty of water, and keep skin clean and dry.  This Request Form does not pertain to Plaintiff's alleged "burns" to her skin allegedly occurring a year earlier.  In any event, it shows that she was seen by medical personnel and given a plan of care.

In another healthcare request form dated April 2025, Plaintiff states:

> spider bite (recluse) beside r. nostril – to which venom has reacted with residual "OC" pepper spray embedded in skin from 19-day torture in "observation #2" circa March 2024.  Infection has ensued; intense pain and is evidently intensified by estrogen deficiency; needing antivenom and possibly to be assessed by outside derm specialist and full diagnosis and treatment.

She was seen that day, and the "Triaging Staff" responded that the "provider [was] made aware of {Plaintiff's] wish to see endocrinologist."  Again, this Request Form is dated a year after she allegedly sustained "burns."  It beggars belief that she would still have "residual" OC spray on her face a year later.  And she was triaged, and it was determined to let her provider know that she wished to be seen by an endocrinologist.  This difference in judgment between a prisoner and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough

to establish a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020).

Finally, it is obvious that photographing alleged skin damage, as Plaintiff requested, is not a "serious medical need." This claim will be dismissed for failing to state a claim.

### 5. Equal protection claim

Plaintiff asserts that the issuance of a disciplinary report for her being on a hunger strike violated her right to equal protection.

The Sixth Circuit had held that the "Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Here, Plaintiff does not allege that Defendants' actions have burdened a fundamental right, that she is a member of a suspect class, or that she was treated differently than other similarly-situated prisoners. Thus, the Court will dismiss Plaintiff's equal protection claim for failure to state a claim upon which relief may be granted. *See, e.g., Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011) (holding that dismissal of an equal protection claim was appropriate under Fed. R. Civ. P. 12(b)(6) where the [ ] complaint did not "point to any individual who was treated differently").

### 6. Due process claim

Plaintiff alleges that because two witnesses were not allowed to testify on her behalf during a disciplinary hearing, her due process right was violated. She states that her requested witnesses, nurses who examined her during her hunger strike, could have testified to her "innocence" by testifying that Plaintiff sustained no injury from the hunger strike.

"[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 411, 480 (1972)). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. In *Wolff v. McDonnell*, the Supreme Court held that, when a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires (i) written notice of the charges at least twenty-four hours prior to the hearing; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. 418 U.S. at 563–64, 566. These protections are required only when a liberty interest is at stake. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484); *see Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing).

Moreover, the complaint sets forth no facts demonstrating that Plaintiff had a liberty interest in the outcome of a disciplinary hearing, such as a loss of sentence credit. Here, the complaint fails to allege that the punishment Plaintiff received, or the consequences she endured, imposed an atypical and significant hardship sufficient to violate due process. *See Sandin*, 515 U.S. at 484-86.

Plaintiff also alleges that her Fourteenth Amendment rights were violated by Defendant Eply-Massey and non-Defendants Robertson and Bruce by "obstruction; machinations; denial of access to the courts; sabotage" and that KSP's "administration" pretended to "'lose' or 'misplace'" her legal documents and took inordinate time to process her "legal requests." These allegations are too vague and conclusory to establish the violation of a constitutional dimension. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 7. Sixth Amendment claim

Although Plaintiff refers to the Sixth Amendment, Plaintiff is a convicted prisoner, and she offers no information to suggest that she is currently the target of a criminal prosecution. Thus, the Sixth Amendment has no application. *See* U.S. Const. amend. VI.

### 8. Respondeat Superior

Plaintiff states that Defendants Eply-Massey and Plappert "were made aware of the abuses and inhumane treatment that Plaintiff was being exposed to," but neither did anything to rectify the situation. She further alleges that she talked to Defendant Fisher "almost daily" about the "torture."

Plaintiff appears to attempt to hold these Defendants responsible for the actions of others as their supervisors. However, the doctrine of supervisory liability, or *respondeat superior*, does not apply in § 1983 actions to impute liability to supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). "[L]iability of supervisory personnel must be based on more than merely the right to control employees," *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982), and "cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199,

17

206 (6th Cir. 1998)).  "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability."  *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).  Consequently, Plaintiff fails to state a claim against these Defendants for their failure to act.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted.

Date:  October 3, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
4414.009